

# HILL RIVKINS LLP
45 Broadway, Suite 1500, New York, NY 10006-3793
Tel: 212 669-0600   Fax: 212 669-0698/0699
e-mail: thefirm@hillrivkins.com
Website: www.hillrivkins.com

JUSTIN M. HEILIG
Direct: (212) 669-0644
jheilig@hillrivkins.com

November 8, 2018

**Via CM/ECF System**

The Honorable P. Kevin Castel
United States District Court
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Courtroom 11D
New York, NY 10007-1312

## PRE-MOTION LETTER

    Re:    *Hartford Fire Ins. Co. a/s/o Klearwall Indus., Inc. v. Maersk Line*
            S.D.N.Y. Case No. 18-cv-00121-PKC
            Our Ref: 34440
            - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Dear Judge Castel:

      We represent Defendant Sapsan, LLC ("Sapsan") in the above-referenced action. Pursuant to section 3.A of Your Honor's individual rules, we respectfully submit this letter request for leave to file a Rule 12(b) motion to dismiss based on multiple grounds.

    **I.**    **Procedural Background**

      **On January 8, 2018**, Plaintiff Hartford Fire Insurance Company ("Plaintiff") filed its original Complaint as subrogee of Klearwall Industries, alleging damages to a shipment of windows transported from Ireland to Connecticut in February-March 2017. *See* Dkt. #1. The original Complaint named three defendants: Maersk Line, a division of the A.P. Moller-Maersk Group ("Maersk"), Blanchard Transportation Services, Inc. ("BTS"), and Albatrans, Inc. ("Albatrans"). According to the parties' joint pre-trial conference letter to the Court, Maersk acted as the ocean carrier, while Albatrans acted as the inbound Customs broker for the shipment. *See* Dkt. #22.

NEW JERSEY
102 South Broadway
South Amboy, NJ 08879-1708
Tel: 732 838-0300   Fax: 732 316-2365
e-mail: thefirm@hillrivkins.com

TEXAS
55 Waugh Drive, Suite 1200
Houston, Texas 77007
Tel: 713 222-1515   Fax: 713 222-1359
e-mail: thefirm@hillrivkins.com

CALIFORNIA
Hill Rivkins Brown & Associates
11140 Fair Oaks Boulevard, Suite 100
Fair Oaks, CA 95628-5126
Tel: 916 535-0263   Fax: 916 535-0268
e-mail: thefirm@brnlaw.com

Hon. P. Kevin Castel
USDC - SDNY
November 8, 2018
<u>Page Two</u>

**On February 20, 2018**, Plaintiff voluntarily dismissed BTS from this action pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i).  *See* Dkt. #12.

**On June 28, 2018**, Plaintiff requested leave to amend its original Complaint for purposes of adding Sapsan as a defendant.  Plaintiff asserted in its pre-motion letter that "further investigation" revealed Sapsan to be the "delivering motor carrier" who transported the shipment to Connecticut upon arrival in the U.S.  *See* Dkt. #24.  The Court granted leave to amend by Order dated June 29, 2018.  *See* Dkt. #25.

**On July 9 and 12, 2018**, Plaintiff filed its Amended Complaint and requested the issuance of a Summons for Sapsan.  *See* Dkt. #26, 27, 28 & 29.

**On September 19 and 21, 2018**, Plaintiff requested the issuance of an Amended Summons for Sapsan, which the Clerk of the Court issued on September 25, 2018.  *See* Dkt. #34, 35 & 36.

**On October 12, 2018**, Plaintiff requested an extension of discovery, indicating further that it was "attempting to re-serve Sapsan, LLC through its Process Agent, and [was] waiting for notice from the Sheriff of service."  *See* Dkt. #37.  The Court granted the extension request and modified several deadlines in the case management plan by Order dated October 17, 2018.  *See* Dkt. #38.

II. **Plaintiff's Factual Allegations & Claims**

Plaintiff's Amended Complaint alleges in relevant part that:

- venue is proper in this District pursuant to the SDNY forum-selection clause in paragraph 26 of the terms & conditions to Maersk's bills of lading (Dkt. #28 at ¶ 2);

- Sapsan is a motor carrier authorized by the Federal Motor Carrier Safety Administration to transport property in interstate commerce (*id.* at ¶ 7);

- Plaintiff (or, presumably its subrogor) "contracted with the defendant, Albatrans, Inc., to transport the shipment of windows" from Ireland to the U.S. (*id.* at ¶ 10);



Hon. P. Kevin Castel
USDC - SDNY
November 8, 2018
<u>Page Three</u>

- Maersk issued two bills of lading, nos. MAEU959339861 and MAEU959284243, for the shipment at issue, which consisted of two containers (*id.* at ¶ 12);

- The shipment was tendered to Sapsan on or before February 23, 2018 pursuant to Albatrans delivery order no. 0112885 (*id.* at ¶ 13); and

- Sapsan delivered the shipment to a warehouse in Stratford, Connecticut on or about March 2 and 3, 2017 (*id.* at ¶ 15).

Based on the foregoing facts, the Amended Complaint enumerates two counts against Maersk, Albatrans, and Sapsan. The **First Count** contends that "Defendants and each of them breached their contract for ocean carriage by failing to deliver the shipment in good order and condition," and therefore are liable under the U.S. Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 30701 note. *See* Dkt. #28 at ¶¶ 17-20. The **Second Count** similarly contends that "Defendants and each of them breached their common law contract to provide transportation services, the contract for carriage and/or bailment by failing to deliver the shipment in good order and condition." *See id.* at ¶¶ 21-24.

### III.  Pleading Standards

Without summarizing the well-established *Iqbal-Twombly* standards or the presumptions afforded to a non-movant, we note that a court may consider documents incorporated by reference in the complaint when determining a Rule 12(b)(6) motion. *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *accord Mabry v. Neighborhood Defender Service*, 769 F.Supp.2d 381, 390 (S.D.N.Y. 2011) (Castel, J.).

For purposes of Sapsan's contemplated motion, the Court thus would be entitled to consider (i) Maersk's bills of lading, which are more accurately described as non-negotiable waybills, (ii) the terms & conditions thereto, and (iii) Albatrans' delivery orders—all of which are expressly referenced in, and integral to, Plaintiff's Amended Complaint. *See* Dkt. #28 at ¶¶ 2, 12, & 13.

We also note that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that indiscriminately "lumps" multiple defendants together, and accuses them of the same general misconduct without



Hon. P. Kevin Castel
USDC - SDNY
November 8, 2018
Page Four

distinguishing between them, violates this pleading standard. *See*, *e.g.*, *Atuahene v. City of Hartford*, 10 F. Appx. 33, 34 (2d Cir. 2001); *Sheeran v. Blyth Shipholding S.A.*, 2015 WL 9048979 at *2-3 (D.N.J. Dec. 16, 2015); *Medina v. Bauer*, 2004 WL 136636 at *6 (S.D.N.Y. Jan. 27, 2004).

### IV.     Grounds for Dismissal

As indicated above, there are multiple grounds on which dismissal would be appropriate in this action. In short: (i) Sapsan acted as a motor carrier and cannot be held liable under the statute that imposes liability on ocean carriers; (ii) Plaintiff's claim for common-law carrier liability is preempted; (iii) Maersk's waybills are not multimodal waybills and do not cover the inland carriage to destination; (iv) even if they could govern the inland carriage, Maersk's waybills contain a covenant not to sue parties such as Sapsan; and (v) any COGSA claim against Sapsan would be time-barred.

**First**, "COGSA governs the terms of bills of lading issued by ocean carriers in foreign trade." *Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.*, 561 U.S. 89, 96 (2010). The statute applies *ex proprio vigore* to all contracts for the "carriage of goods" by sea between U.S. and foreign ports, defined as the "period from the time when the goods are loaded on to the time when they are discharged from the ship." 46 U.S.C. § 30701 note (previously codified as 46 U.S.C. app. § 1301(e)); *see also Senator Linie GmbH & Co. KG v. Sunway Line, Inc.*, 291 F.3d 145, 153 (2d Cir. 2002).

Subject to one exception discussed below, COGSA simply does not govern the liability of *motor carriers* for cargo damage. Instead, the Carmack Amendment to the Interstate Commerce Act ("Carmack") established a "single uniform regime for recovery by shippers directly from the interstate [motor] carrier in whose care their items are damaged, and by preempting the shipper's state and common law claims against a carrier for loss or damage to goods during shipment." *Project Hope v. M/V Ibn Sina*, 250 F.3d 67, 73-74 n.6 (2d Cir. 2001) (internal citations omitted). Where applicable, COGSA likewise preempts state-law claims for cargo damage. *Alpina Ins. Co. v. Trans Am. Trucking Serv., Inc.*, 2004 WL 1673310 at *4 (S.D.N.Y. July 28, 2004) (citing cases).

According to Maersk's waybills and Albatrans' delivery orders (attached hereto as **Exhibits A & B**), the two containers comprising the shipment were discharged to the Port Newark Container Terminal in New Jersey. The Amended Complaint expressly



alleges that Sapsan was the inland motor carrier that delivered the shipment to destination in Connecticut upon arrival in the U.S. *See* Dkt. #28 at ¶¶ 7 & 15. Thus—putting aside Plaintiff's attempt to impermissibly "lump" all of the defendants together—the First Count against Sapsan fails as a matter of law because motor carriers are not subject to liability (as ocean carriers) under COGSA.

**Second**, Plaintiff's threadbare Second Count against Sapsan for common-law carrier liability fails as a matter of law because either COGSA or Carmack would preempt the same. *Project Hope*, 250 F.3d at 73-74 n.6; *Alpina*, 2004 WL 1673310 at *4. Indeed, Plaintiff has failed to allege any facts that could plausibly support one of statutory exemptions to Carmack's application for purposes of pursuing federal common law claims against Sapsan. *See* 49 U.S.C. § 13506; *Royal & Sun Alliance Ins. PLC v. Rogers Transp. Mgmt. Servs., Inc.*, 737 F.Supp.2d 154, 158-59 (S.D.N.Y. 2010).

**Third**, although the Supreme Court held in *Regal-Beloit* that Carmack does not apply to a shipment originating overseas under a single through bill of lading, 561 U.S. at 100, the Maersk waybills are not "through" (or "multimodal") waybills. *See Royal & Sun Alliance Ins., PLC v. Ocean World Lines, Inc.*, 612 F.3d 138, 141-42 n. 3-7 (2d Cir. 2010). Thus, the exception referenced above does not apply in this case.

There is no dispute that parties may extend COGSA's terms by contract to cover the entire period during which the goods are under a carrier's responsibility, including inland transit by motor carriage before loading or after discharge. *See Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 25-26 (2004) (discussing the popularity "through" bills of lading by which shippers can contract for ocean and inland transportation in a single transaction). The parties likewise may extend COGSA's protections to subcontractors who perform such inland services, typically by including a "Clause Paramount" and a "Himalaya Clause" in the terms of a "through" bill of lading. *See Siaci Saint Honore v. Ironbound Export, Inc.*, 884 F.Supp.2d 100, 105-06 (S.D.N.Y. 2012); *Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 891 F.Supp.2d 489, 500 (S.D.N.Y. 2012).

Here, the Maersk waybills were not multimodal bills of lading and did not cover transportation of the shipment to destination in Connecticut. On their face, the waybills identify the "Port of Discharge" as Newark, but *leave blank* the box for "Place of Delivery." The absence of a named destination is dispositive because paragraph 1 of Maersk's terms & conditions explicitly state that "multimodal transport" arises if the



Hon. P. Kevin Castel
USDC - SDNY
November 8, 2018
Page Six

Place of Delivery is identified on the face of the waybill in the relevant box.[1]  The waybills also list the terms of carriage as "CY/CY," which is a common industry term for "container yard to container yard," meaning that the containers were to be received and delivered at the ocean marine terminals used by Maersk.  *Alpine Fresh, Inc. v. M/V Cap Itaim*, 2011 A.M.C. 2594, 2595 (S.D.N.Y. Oct. 12, 2011).

**Fourth**, even if the Maersk waybills were multimodal waybills that covered the inland transportation after discharge, Plaintiff would be bound by *all of* the terms thereto.  Plaintiff is not entitled to rely on just some of the provisions, like the SDNY forum-selection clause in paragraph 26.  Plaintiff would also be bound by the covenants in paragraph 4 to not sue or make claims against any subcontractor, agent or servant of the carrier. Such covenants (sometimes referred to as "exoneration clauses") are routinely enforced and do not violate public policy.  *See*, *e.g.*, *Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 762 F.3d 165, 181-82 (2d Cir. 2014); *Thyssenkrupp Materials NA, Inc. v. M/V Kacey*, 236 F.Supp.3d 835, 841-42 (S.D.N.Y. 2017); *St. Paul Travelers Ins. Co. v. M/V Madame Butterfly*, 700 F.Supp.2d 496, 503 & 509 (S.D.N.Y. 2010), *aff'd sub nom.* 433 Fed. Appx. 19, 22 (2d Cir. 2011).  Accordingly, Plaintiff would be precluded from pursuing claims against Sapsan.

**Fifth**, even if Plaintiff had a viable COGSA claim against Sapsan, the same would be time-barred.  COGSA provides in relevant part that a carrier "shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods."  46 U.S.C. § 30701 note (previously codified as 46 U.S.C. app. § 1303(6)); *see also Orient Atl. Parco, Inc. v. Maersk Lines*, 740 F.Supp. 1002, 1004 (S.D.N.Y. 1990).  The one-year statute of limitations cannot be tolled by mere investigation into the circumstances of a loss.  *Mikinberg v. Baltic S.S. Co.*, 988 F.2d 327, 330 (2d Cir. 1993).

Plaintiff filed suit on January 8, 2018, expressly alleging that the shipment was delivered to destination in Connecticut on or about March 2 and 3, 2017.  *See* Dkt. #1 at ¶15; *see also* Am. Compl. Dkt. #28 at ¶ 15.  However, Plaintiff did not amend its Complaint to add Sapsan as a defendant until July 9, 2018, and still had not served Sapsan at the time it requested an extension of discovery on October 12, 2018.  *See* Dkt. #37.  Thus, any COGSA claim against Sapsan would be time-barred by the one-year

---

[1] Available at: https://terms.maerskline.com/carriage



Hon. P. Kevin Castel
USDC - SDNY
November 8, 2018
Page Seven

statutes of limitations because Plaintiff cannot satisfy the requirements for the relation back of its amended pleading under Rule 15(c)(1)(C).  *See Girau v. Europower, Inc.*, 317 F.R.D. 414, 421-23 (S.D.N.Y. 2016).

## V. Proposed Motion Schedule

Barring any problems caused by the approaching holidays, we will be prepared to file Sapsan's motion to dismiss within fourteen days (14) days of the Court granting leave to do so.  We also propose that Local Civil Rule 6.1(b) govern the deadlines for serving opposition and reply papers.

We thank the Court for its attention to the foregoing and stand ready to answer any questions that the Court may have with respect to Sapsan's contemplated Rule 12(b) motion to dismiss.

                                  Respectfully submitted,
                                  HILL RIVKINS LLP

                                  Justin M. Heilig
                                  Teresa H. Dooley

Encl.  Exs. A & B

Cc:    All counsel of record via ECF

