UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
HARTFORD FIRE INSURANCE CO., a/s/o
Klearwall Industries, Inc.,

                                  Plaintiff,                                  18-cv-121 (PKC)

                    -against-                                        OPINION
                                                                        AND ORDER

MAERSK LINE, a division of the A.P. Moller-
Maersk Group, ALBATRANS INC., SAPSAN
LLC and XYZ CORP.,

                                  Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

           Plaintiff Hartford Fire Insurance Co. ("Hartford") brings this action as the subrogee of its insured, Klearwall Industries, Inc. ("Klearwall"). Klearwall ordered a shipment of windows from Munster Joinery in Cork, Ireland. Defendant Maersk Line ("Maersk") transported the shipment by ocean vessel to Port Newark in New Jersey, where defendant Sapsan LLC ("Sapsan") accepted the shipment and transported it by truck to Connecticut. While in Sapsan's custody, the shipment passed through New York. The windows allegedly arrived to Klearwall's facility in Connecticut in a damaged and unusable condition. Hartford brings claims under the Carriage of Goods by Sea Act, 46 U.S.C. § 30701, et seq. ("COGSA"), the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706, and a claim for common-law breach of contract. It seeks $306,760.02 in damages, plus interest.

           In its Answer, defendant Maersk brings cross-claims against Sapsan and Albatrans Inc. ("Albatrans"), the freight-forwarding company that retained Sapsan. (Docket # 53.) Maersk alleges that any damage to the windows was caused in whole or in part by Sapsan

and/or Albatrans, and that they should be required to indemnify Maersk and/or make contribution to Maersk in the event that Maersk is found liable.

Sapsan moves to dismiss Hartford's claims and Maersk's cross-claims pursuant to Rules 12(b)(2) and 12(b)(6), Fed. R. Civ. P. (Docket # 49.) It urges that the Second Amended Complaint (the "Complaint") does not allege a prima facie case of personal jurisdiction or plausibly allege a claim for breach of contract or COGSA liability. After the motion was filed, the Court granted Hartford's application to take limited jurisdictional discovery as to Sapsan. In its opposition memo, Hartford "agrees" that the COGSA and breach-of-contract claims against Sapsan should be dismissed, and that any liability on the part of Sapsan is governed exclusively by the Carmack Amendment. (Docket # 60 at 1.) However, Hartford maintains that Sapsan is subject to personal jurisdiction in New York.

For the reasons that will be explained, Hartford has not met its burden of demonstrating New York's specific personal jurisdiction over Sapsan pursuant to CPLR 302(a)(1) or general personal jurisdiction pursuant to CPLR 301. Sapsan's motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) will therefore be granted.

BACKGROUND.

On or before February 23, 2017, Klearwall entered into an agreement with Munster Joinery for the purchase of certain windows. (Compl't ¶ 9.) Klearwall contracted with Albatrans, a freight forwarder, to arrange transport of the windows from Ireland to its eventual destination in Virginia. (Compl't ¶ 10.) The shipment was to be made by ocean carrier and truck. (Compl't ¶ 11.)

Maersk is engaged in the business of transporting goods by ocean carrier. (Compl't ¶ 5.) The windows were tendered to Maersk in good order and condition pursuant to

Maersk's bills of lading. (Compl't ¶ 12.) Maersk tendered the shipment to Sapsan at the Port Newark Container Terminal in New Jersey. (Compl't ¶ 13; Nilsen Dec. ¶ 9.) On or about March 2 or 3, 2017, Sapsan delivered the shipment to a warehouse in Stratford, Connecticut, where Klearwall discovered that the windows were damaged and unusable. (Compl't ¶ 15.) According to the Complaint, while in transit, the shipment sustained damage in excess of $306,760.02. (Compl't ¶ 14.)

In Count Three, Hartford brings a claim under the Carmack Amendment against Sapsan only, alleging that its failure to deliver the shipment of windows in good order constituted a breach of the contract of carriage. (Compl't ¶¶ 25-28.)

In support of its motion, Sapsan submitted a declaration from Sapsan's owner, Yulian Nilsen, which described Sapsan's activities in New York. (Docket # 52.) As noted, the Court granted Hartford's application to conduct limited jurisdictional discovery as to Sapsan. (Docket # 57.) A transcript of Nilsen's deposition is attached to Hartford's opposition papers. (Docket # 61-1.)

SAPSAN'S RULE 12(b)(2) MOTION IS GRANTED.

    A. <u>Rule 12(b)(2) Standard.</u>

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the court's personal jurisdiction over the defendant. <u>Penguin Grp. (USA) Inc. v. Am. Buddha</u>, 609 F.3d 30, 34-35 (2d Cir. 2010). The complaint's allegations are assumed to be true, and the plaintiff need only make a prima facie showing of personal jurisdiction. <u>Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.</u>, 722 F.3d 81, 85 (2d Cir. 2013) (per curiam).

A district court may rely on affidavits without converting a Rule 12(b)(2) motion into a motion for summary judgment. Id. at 86. The court should construe any pleadings and affidavits in the light most favorable to the plaintiff and resolve all doubts in its favor. Id. at 85. However, courts should "not draw argumentative inferences in the plaintiff's favor" or "accept as true a legal conclusion couched as a factual allegation." In re Terrorist Attacks on Sept. 11, 2001, 714 F.3d 659, 673 (2d Cir. 2013) (quotation marks omitted). A court has "considerable procedural leeway" on a Rule 12(b)(2) motion, and may decide it on the basis of affidavits alone, permit discovery in aid of the motion, or conduct an evidentiary hearing. Dorchester, 722 F.3d at 84. "After discovery, the plaintiff's prima facie showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant. At that point, the prima facie showing must be factually supported." Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990) (citations omitted).

Personal jurisdiction may be exercised over any defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Rule 4(k)(1)(A), Fed. R. Civ. P. If a plaintiff establishes a factual predicate for jurisdiction under the laws of the forum state – here, New York – then the court must consider whether the exercise of jurisdiction is consistent with due process. Walden v. Fiore, 571 U.S. 277, 283 (2014).

### B. Discussion.

#### 1. Hartford Has Made Not Out a Case that Sapsan Is Subject to Specific Personal Jurisdiction Pursuant to CPLR 302(a)(1).

Hartford urges that New York has specific jurisdiction over Sapsan pursuant to New York's long-arm statute, CPLR 302(a)(1). "Specific jurisdiction . . . depends on an affiliation between the forum and the underlying controversy, principally, activity or an

occurrence that takes place in the forum State and is therefore subject to the State's regulation." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011) (quotation marks and alteration omitted). CPLR 302(a)(1) provides that "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent: 1. transacts any business within the state or contracts anywhere to supply goods or services in the state . . . ." The cause of action, however, must "aris[e] from" the transaction of business or the supply of goods and services within the state. Id. "By this 'single act statute . . . proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted.'" Deutsche Bank Sec., Inc. v. Montana Bd. of Investments, 7 N.Y.3d 65, 71 (2006) (quoting Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460, 467 (1988)).

A two-part test governs whether a defendant is subject to jurisdiction under CPLR 302(a)(1). First, a court "determine[s] if defendant purposefully availed itself of the privilege of conducting activities in the state by transacting business in New York." D & R Global Selections, S.L. v. Bodega Olegario Falcon Pineiro, 29 N.Y.3d 292, 297-98 (2017) (quotation marks omitted). "A non-domiciliary defendant transacts business in New York when on his or her own initiative, the non-domiciliary projects himself or herself into this state to engage in a sustained and substantial transaction of business. The primary consideration is the quality of the non-domiciliary's New York contacts. As relevant here, purposeful availment occurs when the non-domiciliary seeks out and initiates contact with New York, solicits business in New York, and establishes a continuing relationship." Id. at 298 (citations, quotation marks and alterations

omitted). It is appropriate to consider whether an out-of-state defendant's activities in New York relate to a "major aspect" or "principal reason" of its business. Deutsche Bank, 7 N.Y. 3d at 72.

Second, "the claim must arise from [the] business transaction or from the contract to supply goods or services . . . ." D & R Global, 29 N.Y.3d at 297. This means that "the plaintiff's cause of action must have an 'articulable nexus' or 'substantial relationship' with the defendant's transaction of business here." Id. at 298-99. "At the very least, there must be 'a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former, regardless of the ultimate merits of the claim.'" Id. at 299 (quoting Licci v Lebanese Can. Bank, SAL, 20 N.Y.3d 327, 339 (2012)). "This inquiry is relatively permissive and an articulable nexus or substantial relationship exists where at least one element arises from the New York contacts rather than every element of the cause of action pleaded. The nexus is insufficient where the relationship between the claim and transaction is too attenuated or merely coincidental." Id. (quotation marks and citation omitted).

In support of its Rule 12(b)(2) motion, Sapsan has submitted a declaration from Yulian Nilsen, who states that he is the owner and managing member of Sapsan. (Nilsen Dec. ¶ 1.) Nilsen states that Sapsan operates out of his home in Wallington, New Jersey and that it leases a yard in Elizabeth, New Jersey. (Id. ¶ 3.) Nilsen states that Sapsan's vehicles are registered in the State of New Jersey and driven by independent contractors. (Id. ¶ 4.) He states that Sapsan does not maintain bank accounts in New York or own real property in New York, but that it pays highway use taxes to the State of New York. (Id. ¶¶ 5-7.)

Nilsen states that since approximately February 2017, Sapsan has transported, on average, two containers per month belonging to Klearwall from the Port Newark Container Terminal in New Jersey to a warehouse in Stratford, Connecticut. (Id. ¶ 9.) He states that

Sapsan was hired to do so by defendant Albatrans, which operates as a freight forwarder. (Id. ¶¶ 8-10.) Albatrans is a New York corporation with its principal place of business in Jamaica, Queens. (Smith Dec. Ex. G.) In his deposition, Nilsen testified that Sapsan did not enter into formal written contracts with Albatrans, and instead conducted business with it on "an individual basis." (Nilsen Dep. 13.) He explained that Albatrans would e-mail him with a rate request, he responded with Sapsan's rate, and Albatrans would then retain Sapsan for a transport job. (Id. 13-15.) In addition to Sapsan's work with Albatrans, Nilsen testified that it performs services for two other New York-based freight forwarders, BNX Shipping and Kay International. (Id. 15-16.)

In the case of the damaged Klearwall shipment, Albatrans hired and paid Sapsan. (Id. 28-29.) Nilsen testified that Sapsan picked up the shipment at the Port Newark Container Terminal for delivery to Blatchford Transportation in Stratford, Connecticut, and that Sapsan transported the shipment by road through New York. (Id. 49-50.) Nilsen testified:

> Q. And to deliver those goods from New Jersey to Connecticut, did Sapsan drive through New York, or its truckers?
> A. Yes, yes, you would have to cross over George Washington Bridge or Whitestone Bridge to get into Connecticut.

(Id. 50-51.)

In his deposition, Nilsen testified that Sapsan generally transports ocean containers from ports in New York and New Jersey. (Id. 18.) He testified that "[m]ost" of those ports are in New Jersey and that "occasionally" Sapsan retrieves containers from a port in Staten Island. (Id. 18-19.) He testified that Sapsan "sometimes" conducts deliveries in New York and "sometimes" retrieves containers in New York. (Id. 27-28.) He testified:

> Q. And you pick up goods within the state of New York?
> A. Yes, import, export. You deliver goods for import and you pick up goods when it's an export.

(Id. 47.)

Counsel also reviewed with Nilsen an MT-903 highway-use tax return filed with the State of New York by Sapsan. (Id. 44-47; see also Smith Aff't Ex. E.) Nilsen confirmed that for the year of 2017, Sapsan reported that its vehicles traveled 23,166 miles on New York roads. (Nilsen Dep. 44-46; Smith Aff't Ex. E.) For the first six months of 2018, Sapsan vehicles traveled 12,570 miles on New York roads. (Id. 46-47.)

The Court concludes that Hartford has satisfied the first prong of CPLR 302(a)(1), and has made a prima facie case that Sapsan has transacted business in New York. Its purposeful acts include delivering shipments within New York; retrieving containers from a port in Staten Island; and traveling a monthly average of approximately 2,000 miles over New York roadways. Sapsan has purposefully projected itself into New York, and its ongoing business with Albatrans demonstrates "the purposeful creation of a continuing relationship with a New York corporation." D & R Global, 29 N.Y.3d at 298.

However, on the second prong, the Court concludes that Hartford has not made out a prima facie case that its claimed injuries arose from Sapsan's agreement with Albatrans to "supply goods or services in the state." CPLR 302(a)(1). The Carmack Amendment claim is directed to Sapsan's alleged failure to deliver the shipment from New Jersey to Connecticut in good order and condition. (Compl't ¶ 27 ("Defendant's failure to deliver the shipment of windows in good order and condition constitutes a breach of the contract of carriage between Plaintiff and Defendant.").)[1] A plaintiff makes out a prima facie case of Carmack Amendment liability by showing "1) delivery to the carrier in good condition; 2) arrival in damaged

---

[1] No party has identified or alleged the existence of a contract between Klearwall and Sapsan.

condition; and 3) the amount of damages caused by the loss." Project Hope v. M/V IBN SINA, 250 F.3d 67, 73 n.6 (2d Cir. 2001).[2]

Here, the delivery to Sapsan was made in New Jersey, and the shipment arrived in Connecticut. As Nilsen acknowledged, the shipment moved through New York while in Sapsan's custody. (Nilsen Dep. 50-51 ("Yes, yes, you would have to cross over George Washington Bridge or Whitestone Bridge to get into Connecticut.").) However, Hartford does not allege in the Complaint, or urge following jurisdictional discovery, that Klearwall's cargo was actually damaged in New York. Physical transport through New York, standing alone, does not demonstrate that the claim "aris[es] from" a contract "to supply goods or services in the state . . . ." CPLR 302(a)(1). See, e.g., Copterline Oy v. Sikorsky Aircraft Corp., 649 F. Supp. 2d 5, 14 (E.D.N.Y. 2007) (the retention of a New York freight forwarder by a Finnish corporation to transport equipment from Connecticut to Finland did not give rise to jurisdiction under CPLR 302(a)(1)). As Judge Glasser aptly said in Copterline, the cargo's passage through New York "was merely a pit stop en route to Finland." Id. Similarly, William Sys., Ltd. v. Total Freight Sys., Inc., 27 F. Supp. 2d 386, 388 (E.D.N.Y. 1998), declined to exercise jurisdiction pursuant to CPLR 302(a) where "New York's only connection to this matter is the incidental passage of the freight through New York on its way from New Jersey to Connecticut."

Hartford has not demonstrated that any element of its claim under the Carmack Amendment has an "articulable nexus" or "substantial relationship" to a New York transaction. D & R Global, 29 N.Y.3d at 298-99; see also Licci, 20 N.Y.3d at 341 ("[W]here at least one element [of the cause of action] arises from the New York contacts, the relationship between the business transaction and the claim asserted supports specific jurisdiction under the statute.").

---

[2] If a prima facie case is made, the carrier is liable unless it proves one of five affirmative defenses: "acts of God, the public enemy, the act of the shipper himself, public authority, or the inherent vice or nature of the goods." Id.

The Court therefore concludes that Hartford has not made out a prima facie case that Sapsan is subject to specific jurisdiction under CPLR 302(a)(1).

2. Hartford Has Not Made Out a Case that Sapsan Is Subject to General Personal Jurisdiction Pursuant to CPLR 301.

Hartford separately urges that Sapsan is subject to general personal jurisdiction in New York pursuant to CPLR 301. For the reasons that will be explained, the Court concludes that Hartford has not made out a prima facie case that Sapsan's affiliations with New York are so continuous and systematic that it is essentially "at home" in the state.

"General jurisdiction in New York is provided for in CPLR 301, which allows a court to exercise 'such jurisdiction over persons, property, or status as might have been exercised heretofore.'" Aybar v. Aybar, 169 A.D.3d 137, 143 (2d Dep't 2019). Historically, CPLR 301 allowed for the exercise of general jurisdiction over a foreign corporation that had engaged in "such a continuous and systematic course of 'doing business' here that a finding of its 'presence' in this jurisdiction [was] warranted.'" Id. (quoting Landoil Res. Corp. v. Alexander & Alexander Servs., Inc., 77 N.Y.2d 28, 33 (1990)).

After the Supreme Court's guidance on due process in Daimler AG v. Bauman, 571 U.S. 117, 139 (2014), however, New York exercises general personal jurisdiction only if "the corporation's affiliations with the state 'are so "continuous and systematic" as to render them essentially at home in the forum State.'" Aybar, 169 A.D.3d at 144 (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)); see also Qudsi v. Larios, 173 A.D.3d 920, 922 (2d Dep't 2019) (under "modern jurisprudence," New York typically exercises general jurisdiction only over individuals domiciled in New York and corporations that are either incorporated or have a principal place of business in New York); Brown v. Lockheed Martin Corp., 814 F.3d 619, 627 (2d Cir. 2016) ("except in a truly 'exceptional' case, a corporate

defendant may be treated as 'essentially at home' only where it is incorporated or maintains its principal place of business — the 'paradigm' cases.").

Defendant Sapsan is a limited liability company. The only member of Sapsan identified by the parties is Mr. Nilsen, who is domiciled in New Jersey. (Nilsen Dec. ¶¶ 1, 3.) Sapsan was formed under New Jersey law in 2009. (Id. ¶ 1.) It operates out of Nilsen's home in New Jersey and its only other physical premises is a yard located in Elizabeth, New Jersey. (Id. ¶ 3.) There is no assertion that Sapsan maintains a permanent physical presence in New York or that it was formed under New York law.

Hartford urges that Sapsan is subject to general personal jurisdiction because it operates in a 250-mile radius, which would encompass New York (Nilsen Dep. 21-22); that Sapsan sometimes "operates" from a terminal in Staten Island (id. 18); that it works with freight forwarders based in New York, including Albatrans, BNX Shipping and Kay International (id. 15-16); that it performs pickups and deliveries for New York customers (id. 27-28, 41); that its insurance agent is located in Staten Island (id. 9-11, 55); and that it pays highway use taxes to New York and uses New York roads extensively (id. 26-28, 44-47).

These contacts do not render Sapsan "essentially at home" in New York. Hartford has pointed to evidence that Sapsan has frequent business dealings in New York and that its agents are physically present in the state to retrieve or deliver shipments. As a trucking company, those contacts are not "truly 'exceptional.'" Brown, 814 F.3d at 627. If the frequent retrieval and delivery of shipments to New York, using New York roads, were sufficient to confer general jurisdiction, private shipping firms might be deemed "at home" in any number of states. But "[a] corporation that operates in many places can scarcely be deemed at home in all of them." Daimler, 571 U.S. at 139 n. 20; see also Sonera Holding B.V. v. Cukurova Holding

A.S., 750 F.3d 221, 226 (2d Cir. 2014) ("even a company's 'engage[ment] in a substantial, continuous, and systematic course of business' is alone insufficient to render it at home in a forum.") (quoting Daimler, 571 U.S. at 138).  Hartford has not pointed to activities by Sapsan sufficient to demonstrate that it is "at home" in New York.

Hartford also points out that Sapsan has designated an agent in the State of New York to accept service of process on its behalf pursuant to regulation under the Federal Motor Carrier Act, 49 U.S.C. § 13304(a), 49 C.F.R. § 366.4 ("FMCA").  Some authorities have held that the designation of an agent pursuant to the FMCA acts as a consent to general personal jurisdiction.  See, e.g., Ocepek v. Corporate Transport, Inc., 950 F.2d 556 (8th Cir. 1991); Falzon v. Johnson, 2012 WL 4801558 (E.D.N.Y. Sept. 11, 2012), R & R adopted, 2012 WL 4798670 (E.D.N.Y. Oct. 9, 2012).  Following Daimler, however, courts have concluded that the appointment of an agent to accept service of process, when required by regulation or statute, does not effect a broad consent to jurisdiction.  See, e.g., Brown, 814 F.3d at 623 ("by registering to transact business and appointing an agent under the Connecticut statutes . . . [defendant] did not consent to the . . . exercise of general jurisdiction over it.  A more sweeping interpretation would raise constitutional concerns . . . ."); Hegemann v. M & M Am., Inc., 2018 WL 4502181, at *6 (D. Vt. Sept. 20, 2018) (designation of agent under the FMCA is not a consent to general personal jurisdiction) (citing Brown); Aybar, 169 A.D.3d at 147-52 (foreign corporation's appointment of an agent to accept service of process, as required by New York Business Corporation Law, was not a consent to general personal jurisdiction).  The Court concludes that Sapsan's designation of an agent to accept service of process on its behalf does not effect a consent to general personal jurisdiction in New York.

The Court therefore concludes that Hartford has not made out a case that Sapsan is subject to general personal jurisdiction in New York pursuant to CPLR 301.

CONCLUSION.

Sapsan's motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) is GRANTED. Because the Court does not have personal jurisdiction over Sapsan, it does not reach its motion to dismiss Maersk's cross-claims pursuant to Rule 12(b)(6). The Clerk is directed to terminate the motion. (Docket # 49.)

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
September 17, 2019